## WILKIRSON v. YARBROUGH.
(No. 409–3767.)

(Commission of Appeals of Texas, Section B. Dec. 5, 1923.)

**1. Mines and minerals &#9758;57—Failure to plead or prove want of title held to preclude relief for failure to furnish marketable title.**

Where defendant, in an action to cancel an oil and gas lease that had been delivered in escrow and to cancel a contract to deliver same, by cross-action alleged plaintiff's failure to furnish an abstract showing good and marketable title, as required, and prayed damages for the alleged breach, but failed to plead or prove actual want of title in plaintiff, and rested his case solely upon suspicions of a material defect, he was not entitled to the relief sought.

**2. Vendor and purchaser &#9758;350—Actual bad title in the vendor must be established to warrant recovery of damages for breach of purchase contract.**

Where a purchaser of realty seeking to recover damages for a breach of the contract rests his action on a defect in title, it is not sufficient for him to show that title has been deemed insufficient by attorneys or conveyancers, but he must prove the title bad.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Action by O. L. Wilkirson against Jack Yarbrough and another. Judgment for named defendant on a cross-action was affirmed by the Court of Civil Appeals (238 S. W. 693), and plaintiff brings error. Judgments of district court and Court of Civil Appeals reversed, and judgment rendered for plaintiff.

James Spiller, of Wortham, Goree, Odell & Allen, of Fort Worth, and Phillips & Townsend, of Dallas, for plaintiff in error.

Burns, Christian, Gumm & Gordan, of Fort Worth, and Woodruff & Woodruff, of Sweetwater, for defendant in error.

HAMILTON, J. [1] The statement of the case and findings of fact made by the Court of Civil Appeals follow:

"O. L. Wilkirson instituted this suit against Jack Yarbrough to cancel a certain oil and gas lease which he had ·contracted to give Yarbrough on five sections of land in Nolan county, and which lease had been deposited in escrow, but which had never been delivered to Yarbrough; also to cancel his written contract to execute and deliver said lease. Plaintiff alleged that by the terms of the written contract made by himself and the defendant he had obligated himself to furnish to the defendant an abstract showing a good and merchantable title to the land covered by the lease, and that defendant had bound himself to accept such a showing of title and to pay the purchase price therefor, as stipulated in the contract; that plaintiff had

furnished such a showing of title, but that defendant had breached his contract to accept the same and pay the agreed consideration therefor. The relief prayed for by the plaintiff was a cancellation of the lease.

"In his answer the defendant denied that plaintiff had furnished an abstract showing a good and merchantable title, and for the alleged breach of contract in that respect, by cross-action, sued to recover for the loss of the benefits of his bargain; in other words, for the difference between the market value of the lease and the purchase price which defendant had ·contracted to pay. But defendant did not resist plaintiff's prayer for a cancellation of the lease.

"The case was tried before the court without a jury, and judgment was rendered canceling the lease, but decreeing a recovery in favor of the defendant on his cross-action against plaintiff for the damages prayed for, from which judgment on the cross-action the plaintiff has prosecuted this appeal.

"The trial judge filed findings of fact and conclusions of law. The following facts appear in the court's findings:

"Plaintiff, Wilkirson, and defendant, Yarbrough, entered into a written contract executed by both, by the terms of which Wilkirson contracted to execute and deliver to Yarbrough an oil and gas lease on five sections of land in Nolan county, for a cash consideration to be paid in the sum of $7,600, of which $500 was paid by Yarbrough at the time the contract was executed. The balance of the consideration, to wit, the sum of $7,100, was to be paid upon the delivery to Yarbrough of the lease contracted for. The contract contained these two stipulations: 'Third. Said O. L. Wilkirson has agreed and contracted and hereby agrees and contracts to forthwith deliver to the said Jack Yarbrough an abstract of title, or abstracts of title down to date showing good and merchantable title in the said O. L. Wilkirson, to all of said land hereinabove set out. * * * And the said Jack Yarbrough shall have 20' days after the delivery of said abstract of title within which to have his attorneys pass upon the title to said land, but said attorney shall not, without excuse, delay passing on said title, but shall proceed to examine same with reasonable dispatch within said time, if possible for them to do so. And in the event said abstract of title shows a good and merchantable title to the said land in the said O. L. Wilkirson, and shows that he has the legal right and authority to execute said oil and gas lease, then the balance of the purchase money for said oil and gas lease is to be immediately paid into said bank for said O. L. Wilkirson, but in the event said abstract of title shows minor defects, or such defects as can be cured within a reasonable time, then the said O. L. Wilkirson is to cure said defects as soon as possible and return said abstract of title to said Jack Yarbrough, showing said defects cured, and said purchase money is to be immediately paid into said bank to the credit of the said O. L. Wilkirson, and said oil and gas lease is to be delivered as above set out.'

"Contemporaneously with the execution of the contract Wilkirson executed the oil and

gas lease stipulated in the contract and deposited it in escrow with the Continental State Bank of Sweetwater, Tex., to be delivered in accordance with the stipulations in the written contract quoted above. Thereafter plaintiff furnished to Yarbrough an abstract of title to the land covered by the lease for examination. Yarbrough's attorney examined it and returned it to Wilkirson's attorney, together with a written opinion in which he 'pronounced the title to said lands to be good and merchantable and in the said O. L. Wilkirson, but pointed out and called attention to numerous minor defects in the title to said lands and requested that the same be cured as provided for in said contract.' That report upon the title was made within the 20-day time limit for examination of the abstract which was provided for in the contract. Upon receipt of that opinion with respect to the title, Wilkirson proceeded with reasonable dispatch to cure the minor defects, and about 40 days later returned to Yarbrough's attorney the original abstract with a supplement thereto for examination, which supplemental abstract, according to the court's findings, showed that what Mr. Woodruff, Yarbrough's attorney, had denominated in his original opinion as minor defects, were cured. But at the time the supplemental abstract was presented to Mr. Woodruff he informed Mr. Spiller, plaintiff's attorney, that since the first examination of the abstract he had learned that Wilkirson had been married prior to his marriage with his present wife; that his former wife had died leaving surviving children, some of whom had also died likewise leaving children; that, before proceeding with the further examination of the title, he would require some showing in the abstract that Wilkirson's children by his first marriage owned no interest in the land. Neither the original abstract nor the supplement furnished any information which would cure that objection. The court found as a fact that Wilkirson had been previously married; that his wife had died leaving seven or eight children and some grandchildren, some of whom were living at the time the contract was entered into; and that Wilkirson had acquired the land about June 7, 1910. The contract between plaintiff and defendant was dated in May, 1919. At the time Yarbrough's attorney requested an additional showing that Wilkirson's children by his former marriage had no interest in the land, Wilkirson's attorney promised that he would call the matter to Wilkirson's attention and have the abstracts cured in that particular, if the same could be done. But thereafter neither Wilkirson nor his attorney did anything to remove the objections made by Yarbrough's attorney, and by reason of their failure to do so Yarbrough did not deposit with the Continental State Bank of Sweetwater the balance of the purchase price, contracted to be paid for the lease, but he was ready, willing, and able to carry out the contract according to its terms and stipulations upon the removal of the objections made by his attorney to the title."

Under the contract, Yarbrough was "to have 20 days after the delivery of said abstract of title within which to have his attorneys pass upon the title to said land."

The contract also provides that "in the event said abstract of title shows minor defects or such defects as can be cured within a reasonable time, then the said O. L. Wilkirson is to cure said defects as soon as possible and return said abstract of title to said Jack Yarbrough, showing said defects cured. * * *"

Wilkirson furnished the abstract. Yarbrough's attorney pointed out the minor defects which he desired cured. Wilkerson cured all of the defects pointed out by Yarbrough. Then, long after the 20 days had expired—about 40 days after the delivery of the abstract to Yarbrough—his attorney informed Wilkirson's attorney that, "before proceeding with the further examination of the title, he would require some showing in the abstract that Wilkirson's children by his first marriage owned no interest in the land." Defendant in error does not plead that Wilkirson did not have title to all the land. He does not plead any fraud on Wilkirson's part, does not plead that Wilkirson's children by his first wife had any interest in the land. On the other hand, his answer and cross-action specifically states "that all of the defects in the title of the plaintiff to the lands in suit mentioned in the opinion of this defendant's attorney were in truth and in fact minor defects, * * *" that "it was understood between the parties, as set out in the contract, that in the event said title showed material or important defects, the defendant was not bound under said contract to accept said title in any event, but, on the other hand, under the contract, the plaintiff was to cure such minor defects as said title was subject to," and "that the plaintiff has failed to cure the minor defects pointed out to plaintiff through his attorney by this defendant's attorney."

[2] Since Yarbrough did not plead want of title in Wilkirson, or an outstanding title in Wilkirson's children by his first marriage, it is not surprising that no want of title in Wilkirson to any of the land was proved or shown on the trial of the case. Where a purchaser rests his action on a defect in the title, it is not sufficient to show that the title has been deemed insufficient by attorneys or conveyancers, but he must prove the title bad. Upon failure to prove the title bad, he is not entitled to damages. Maupin on Marketable Title, 677; 1 Sugden on Vendors (8th Am. Ed.) 537; Cranfield v. Gilbert, 1 Espinasse 221.

"A distinction is to be observed between the action to recover damages for breach of the contract or failure of the title and an action to recover back the purchase money in this respect, namely, that in the former action the plaintiff cannot recover unless he shows that the title is absolutely bad, while in the latter he will be entitled to a return of the purchase money if there be a reasonable doubt about the title. So far as the measure of the relief is concerned, the distinction is unimportant except where, by express contract between the

parties or by the law of the jurisdiction, the purchaser would be entitled to recover damages in excess of the purchase money, the general rule being that the purchaser can recover, in the action for damages, nothing beyond the purchase money and interest. But, in respect to the remedy and the pleadings, the distinction is vitally important; for if he declares upon the contract and claims damages for the breach, and the evidence shows that the title is merely doubtful, he can recover nothing; while, if he had counted for money had and received to his use, he would have been entitled to judgment." Maupin on Marketable Title, p. 16.

Yarbrough did not plead or prove Wilkirson's title to the land or any part of it bad. He rested his case on Wilkirson's failure to cure what are alleged to be only minor defects in the title, but which are, in fact, only suspicions of a material defect in title. Since no lack of title in Wilkirson was alleged or proved, Yarbrough was not entitled to recover damages.

Among the trial court's findings of fact is the following:

"That the sum of $500 referred to in the contract sued upon as a cash payment was paid as a forfeit, which was to be held by the said Wilkirson with the understanding that if the said Jack Yarbrough failed or refused to carry out his part of the contract the said contract was to be declared null and void and the $500 retained as damages for the breach thereof, but in the event of the failure of the said Wilkirson to carry out his part of the contract the said $500 was to be returned to the said Jack Yarbrough."

Therefore we recommend that the judgments of the district court and the Court of Civil Appeal be reversed and the judgment be rendered for plaintiff in error.

CURETON, C. J. Judgments of the district court and the Court of Civil Appeals both reversed, and judgment rendered for plaintiff in error.